UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MIRELLE VANGAS and ALFREDO VANGAS, JR.,  :
:
                    Plaintiffs,  :
:
              -against-  :      **OPINION AND ORDER**
:
MONTEFIORE MEDICAL CENTER, ELIZABETH,  :      11 Civ. 6722 (ER)
BURNS, PATRICIA QUINN, and WAGEWORKS, INC.,  :
:
              Defendants.  :
------------------------------------------------------------------------x

Ramos, D.J.:

      Plaintiff Mirelle Vangas was diagnosed with cancer on March 25, 2010. She was terminated by her employer Montefiore Medical Center ("MMC") on August 30, 2010, after she exhausted her Family Medical Leave Act leave of absence and was unable to return to work. Mrs. Vangas and her husband Alfredo Vangas, Jr. ("Plaintiffs") brought this action against MMC, Elizabeth Burns and Patricia Quinn ("Defendants"),[1] alleging, *inter alia*, that MMC violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA" or the "Act") by failing to properly send notification of Plaintiffs' right to continue coverage under MMC's medical plan following Mrs. Vangas' termination. Additionally, Mrs. Vangas alleged that Defendants failed to accommodate her disability in violation of the New York State Human Rights Law ("NYSHRL"), and failed to notify her of the cancellation of her employee benefits within five days of her termination from MMC in violation of the New York Labor Law ("NYLL"). Following a five-day trial in June 2014, the Court granted judgment as a matter of law to Mrs. Vangas on the NYLL claim. The jury then found in Mrs. Vangas' favor on the

---

[1] On February 21, 2013, Plaintiffs voluntarily dismissed all of their claims for relief against Defendant WageWorks, Inc. Doc. 46.

NYSHRL claim,[2] and awarded damages in the total amount of $541,000.[3]

Pending before the Court are Plaintiffs' claims for relief under COBRA.[4] Plaintiffs argue that Defendant MMC failed to properly notify them of their right to continue coverage under MMC's medical plan, in violation of 29 U.S.C. § 1166(a)(4)(A). Compl. ¶¶ 118, 121. Specifically, Plaintiffs, who lived in the town Cornwall on Hudson, New York, claim that they did not receive proper notice of their COBRA rights because the notification letter was improperly addressed to the abbreviated "Cornwallonhuds, New York." Plaintiffs seek reimbursement of medical expenses,[5] statutory damages in the amount of $110 per day from the date MMC was obligated to provide notice until the date judgment is entered,[6] and attorney's fees and costs. *Id.* ¶¶ 119, 122. MMC contends that it fulfilled its obligations under COBRA because courts apply a good faith standard to the Act's notification provision.

For the reasons set forth below, the Court finds in favor of MMC on the COBRA claim and denies Plaintiffs' request for attorney's fees and costs.

---

[2] Mrs. Vangas similarly alleged that Defendants failed to accommodate her disability in violation of the New York City Human Rights Law ("NYCHRL"). During the trial, the Court dismissed the NYCHRL claim for lack of subject matter jurisdiction.

[3] The jury awarded Mrs. Vangas damages as follows: $155,000 in the form of back pay for the NYSHRL claim; $190,000 in the form of front pay for the NYSHRL claim; $181,000 in compensatory damages for the NYSHRL claim; and $15,000 in connection with the NYLL claim.

[4] There is no right to a jury trial in an action to recover benefits under the Employee Retirement Income Security Act (ERISA), of which COBRA is a part. *See O'Hara v. Nat'l Union Fire Ins. Co.*, 642 F.3d 110, 116 (2d Cir. 2011).

[5] According to Plaintiffs, Mrs. Vangas incurred medical expenses in the amount of $13,635.64 in September 2010, and medical expenses in the amount of $10,583.00 thereafter. Am. Joint Pretrial Order at 34.

[6] Plaintiffs do not specify a total amount of statutory damages in their post-trial submission. According to the Amended Pretrial Order, Plaintiffs seek a total of $154,110 each in statutory damages in connection with their COBRA claims. Am. Joint Pretrial Order at 35.

## I. Facts Adduced at Trial

Mirelle Vangas, an employee of MMC since 1989, was diagnosed with cancer on March 25, 2010. Transcript of Trial ("Tr.") 79:2, 78:14-15; Defs.' 56.1 Stmt. ¶ 2. Mrs. Vangas took an immediate leave of absence from MMC upon her diagnosis. Tr. 78:18-21 (M. Vangas). Though Mrs. Vangas was scheduled to return to work on August 30, 2010, she was unable to do so because of new symptoms. Tr. 136:9-21 (M. Vangas). MMC terminated Mrs. Vangas on the same day. Tr. 443:8 (Kathleen Byrne).

Plaintiffs reside at 16 Wood Avenue, Cornwall on Hudson, New York 12520. Tr. 197:12-198:2 (M. Vangas). At trial, Defendants introduced a letter dated September 27, 2010, which was generated to notify Plaintiffs of their right under COBRA to continue medical coverage under MMC's medical plan. *See* Defs. Ex. C-3. Plaintiffs' street address and zip code are correctly reflected in the notification letter. However, the town name in the notice is abbreviated to "Cornwallonhuds." *Id.*

a. *MMC Procedures for COBRA Notification*

Eileen Montalto, the Director of Benefits at MMC, testified that COBRA gives the terminated employee the right to continue his or her employer-sponsored medical plans for themselves and their families upon the loss of benefits through their employment. Tr. 581:20-22. According to Ms. Montalto, MMC maintains a service agreement with WageWorks, an outside vendor, to administer MMC's COBRA benefits. Tr. 582:5-6, 582:8-10. Ms. Montalto testified concerning the procedures followed by WageWorks when an employee is terminated by MMC. Upon the termination of an employee, MMC sends WageWorks an electronic file relating to the employee through MMC's benefits administrator, Aon Hewitt. Tr. 582:14-17, 582:21-23. Typically within the next three to five business days after it receives a terminated employee's

file, WageWorks will mail a letter to the employee that sets forth both the cost of COBRA coverage and the 60-day period within which the employee must enroll for the coverage. Tr. 582:14-17, 592:4-6. A copy of the letter purportedly mailed to Plaintiffs was received in evidence as Defs. Ex. C-3.[7] If the 60-day enrollment period elapses and the terminated employee does not enroll, WageWorks sends a letter notifying the employee that he or she is no longer eligible for the benefit. Tr. 586:8-12. A copy of the letter advising Plaintiffs that they were no longer eligible for coverage due to non-enrollment, which was purportedly mailed to Plaintiffs, was received in evidence as Defs. Ex. G-3.

   b. *MMC's Mailing of COBRA Notification to Plaintiffs*

Mr. and Mrs. Vangas both testified that they never received the required COBRA notice. Tr. 169:25, 467:15. Testimony presented at trial suggests that the COBRA notice was never received because Plaintiffs' address was entered incorrectly on the notice. According to Ms. Montalto, the "Cornwallonhuds" abbreviation would have been used because MMC's information system allows for 14 or 15 characters in the 'town' field, and any town name in excess of this limit is truncated. Tr. 594:1-4.[8]

Despite Plaintiffs' testimony that they never received the COBRA notice, Ms. Montalto testified that she has access to WageWorks' systems and was able to see that, in accordance with the procedures described above, the file was received by WageWorks on September 24, 2010,

---

[7] Ms. Montalto stated that MMC relies on WageWorks to send the letter to the terminated employee. Tr. 584:5.

[8] MMC argues that despite the abbreviated town name in the notice, it is entitled to the presumption that the letter was received by Plaintiffs because there is only one "Wood Avenue" in Cornwall on Hudson, and only one zip code in use for the town. Tr. 197:18, 305:11-14, 306:18-19. Plaintiffs contend that MMC did not exercise reasonable care in notifying Plaintiffs of their COBRA rights because, *inter alia*, the United States Postal Service recognizes only one "acceptable" abbreviation for Cornwall on Hudson: "CORNWALL HDSN." Pls. Mem. L. 7; *see* Pls. Ex. 43.

and that the letter was mailed on September 27, 2010.  Tr. 593:3, 592:23-25.

Mrs. Vangas testified that in October 2010 she received a letter from MMC, dated September 23, 2010, informing her that her health benefits would continue through the end of the month of her last official day as a Montefiore associate.  *See* Pls. Ex. 40.[9]  The letter also indicated that WageWorks would be sending Mrs. Vangas a COBRA enrollment kit.  *Id.*  Importantly, like the COBRA notification letter at issue here, the September 23 letter also utilized the abbreviation "Cornwallonhuds, New York."  *Id.*  In addition, unlike the COBRA notification letter, the September 23 letter did not include the zip code.  There is no dispute, however, that Mrs. Vangas did receive the September 23 letter.  *See* Tr. 265:11.  Despite Mrs. Vangas' receipt of this letter, Ms. Montalto testified that she had no record or knowledge of Mrs. Vangas' contacting MMC's Benefits Department at any point.  Tr. 594:9-10.

Mrs. Vangas also acknowledged that she had previously received at least 18 pieces of mail from MMC and other sources that were abbreviated as follows:  (i) Cornwall, New York; (ii) Cornwall On Hud, New York; and (iii) Cornwall Hdsn, New York.  Tr. 163:11, 168:15, 260:10, 260:25, 262:18, 262:20; 263:2, 263:7, 263:12, 263:24, 264:8, 264:14, 264:17, 264:19; *see* Pls. Exs. 1-4, 5, 8-9, 10-13, 15, 17-20, 22-23.

## II. Discussion

### a. *The Standard*

The purpose of COBRA is to allow employees who lose their jobs to continue their medical coverage at approximately the group rate, which is lower than the rate for individual coverage.  *See Local 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 809 (2d Cir.

---

[9] Mrs. Vangas recalled receiving the September 23, 2010 letter in or around the beginning of October 2010.  Tr. 160:22.  The letter is postmarked September 27, 2010.  Tr. 160:18.

1992).  The notification requirements of COBRA are clear:  when a covered employee is terminated, an employer must notify the administrator of the group health care plan within thirty days, 29 U.S.C. § 1166(a)(2); the administrator then has fourteen days to notify the qualified beneficiary of her right to continue coverage, *id.* § 1166(a)(4).

"COBRA does not require actual receipt of notification by the plan participant; to the contrary, only a good faith attempt to notify is required."  *Ramos v. SEIU Local 74 Welfare Fund*, No. 01 Civ. 2700 (SAS), 2002 WL 519731, at *5 (S.D.N.Y. Apr. 5, 2002); *see also Chiari v. N.Y. Racing Ass'n Inc.*, 972 F. Supp. 2d 346, 364 (E.D.N.Y. 2013) (quoting *Polito v. Tri-Wire Eng'g Solution, Inc.*, 699 F. Supp. 2d 480, 489 (E.D.N.Y. 2010)).  This "good faith" standard obligates employers to use means "reasonably calculated" to reach plan participants.  *See Phillips v. Saratoga Harness Racing, Inc.*, 233 F. Supp. 2d 361, 365 (N.D.N.Y. 2002) (internal citations omitted); *see also Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828, 830 (8th Cir. 2006) (stating that COBRA does not require proof of actual notice, so long as the administrator has sent the notice by means reasonably calculated to reach the recipient).  Moreover, an employer or plan administrator who sends proper notice to the covered employee's last known address is deemed to be in good faith compliance with COBRA's notification requirements.  *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, No. 05 Civ. 5106 (DRH) (ETB), 2009 WL 936602, at *4 (E.D.N.Y. Mar. 31, 2009) (internal quotation marks and citation omitted).

In the Second Circuit, there is a presumption that a letter properly addressed and mailed is received.  *Tufano v. Riegel Transp., Inc.*, No. CV 03-0977 (JO), 2006 WL 335693, at *4 (E.D.N.Y. Feb. 11, 2006) (quoting *DeSimone v. Siena Coll.*, No. 90-CV-1058, 1991 WL 64857, at *2 (N.D.N.Y. Apr. 25, 1991)).  However, in order for the presumption to arise, "office practice must be geared so as to ensure the likelihood that a notice of cancellation is always properly

addressed and mailed." *Tufano*, 2006 WL 335693, at *4.  The presumption of mailing can be established "either by offering the testimony of the person who actually mailed the letter or through indirect evidence, that is, by offering proof that mail is sent pursuant to office procedures followed in the regular course of business." *DeSimone*, 1991 WL 64857, at *2.  As the Second Circuit has repeatedly held, however, only a *"properly addressed"* piece of mail placed in the care of the United States Postal Service is presumed to have been delivered. *Hoffenberg v. C.I.R.*, 905 F.2d 665, 666 (2d Cir. 1990) (emphasis added).

If the defendant successfully creates the presumption, the plaintiff must show some proof that the regular office practice was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable.  *Tufano,* 2006 WL 335693, at *4 (quoting *DeSimone*, 1991 WL 64857, at *2).

   b. *Application to the Facts*

MMC contends, on the facts of this case, that it is entitled to the presumption of receipt despite the fact that the notification did not, according to Plaintiffs, correctly abbreviate "Cornwall on Hudson."  Def. Mem. L. 4.  In support of this argument, MMC claims that there is no dispute that the COBRA notice generated for Plaintiffs correctly reflects their street address and zip code, and that there is only one zip code for Cornwall on Hudson, New York.  *Id.* at 5.  MMC's argument is misplaced.

Courts in this Circuit have consistently found that in order for the presumption of receipt to apply, the COBRA notification in question must have been *"properly addressed."  Tufano*, 2006 WL 335693, at *4 (emphasis added); *see also DeSimone*, 1991 WL 64857, at *2; *Hoffenberg*, 905 F.2d at 666; *In re Cunningham*, 506 B.R. 334, 340 (Bankr. E.D.N.Y. 2014).  It is clear that the notification letter generated for Plaintiffs was *improperly* addressed because it

7

did not use the only "acceptable" abbreviation for Cornwall on Hudson. *See* note 8, *supra*. While Defendant's error may not have been particularly egregious—especially in light of the fact that the notice included the correct street address and zip code for Cornwall on Hudson—MMC's argument that it is entitled to a presumption reserved for properly addressed mail must fail.

Even though the Court finds that MMC is not entitled to a presumption of receipt, Defendant has demonstrated that it fulfilled its good faith obligation on the facts presented at trial. MMC presented testimony from its Director of Benefits that established not only that it maintains standard operating procedures for the mailing of COBRA notification letters, but also that these procedures were followed in this case. Ms. Montalto's testimony regarding the procedures followed in Plaintiffs' case was entirely consistent with her testimony regarding MMC's and WageWorks' standard operating procedures. Moreover, Defendant produced its copy of the notification letter WageWorks generated for Plaintiffs, which supports the conclusion that such procedures were in fact followed here. Finally, the fact that Plaintiffs received a letter that was not only addressed to "Cornwallonhuds," but also did not have a zip code (unlike the COBRA notification letter), is strong support for the conclusion that Defendant used means reasonably calculated to reach Plaintiffs. Plaintiffs' receipt of the 18 other pieces of incorrectly addressed mail only reinforces this point.

Courts have routinely found that employers and plan administrators fulfill their duties under COBRA on the basis of similar evidence. In *Keegan v. Bloomingdale's, Inc.*, 992 F. Supp. 974, 979-80 (N.D. Ill. 1998), for example, the court granted the employer and plan administrator's motion for summary judgment where the defendants introduced affidavits of several employees explaining the standard automated procedure for generating COBRA letters and also produced a copy of the notification letter sent to Plaintiffs. Similarly, in *Myers v.*

*Carroll Independent Fuel Co.*, Civ. No. RDB 09-1633, 2011 WL 43085, at *10 (D. Md. Jan. 6, 2011), the court granted the plan administrator's motion for summary judgment where the procedures used would have caused a COBRA letter to be sent to the plaintiff, as well as business records indicating that the letter was in fact sent to the plaintiff.  And in *Smith v. AT & T Broadband Network Solutions, Inc.*, No. 01 C 2894, 2002 WL 370217, at *15 (N.D. Ill. Mar. 8, 2002), the court granted the employer's motion for summary judgment where the employer presented evidence that it was regular procedure to notify the terminated employee of his COBRA rights and also submitted a computer-generated log of COBRA notices created at or around the time of the mailing of the plaintiff's notice.  *See also Gibbs v. A. Finkl & Sons Co.*, No. 00 C 4546, 2002 WL 318291, at *5 (N.D. Ill. Feb. 26, 2002) (granting employer's motion for summary judgment where its benefits administrator testified to the employer's standard office procedure regarding COBRA notification, confirmed that the employer's computer records indicated that a COBRA notice was generated, and stated that she remembered sending the plaintiff's notice in accordance with the standard procedures on or about the date in question); *Roberts v. Nat'l Health Corp.*, 963 F. Supp. 512, 515 (D.S.C. 1997), *aff'd*, 133 F.3d 916 (4th Cir. 1998) (granting defendant's motion for summary judgment where the employer provided evidence of an established procedure for COBRA notification, presented testimony that such procedure was followed in the plaintiff's case, and produced a COBRA report stamped with the date the COBRA letter was mailed to the plaintiff).[10]  In light of Ms. Montalto's testimony and

---

[10] By contrast, in *Tufano*, the court found in favor of the plaintiff former employee.  2006 WL 335693, at *2.  There, the employer truck company did not have an official COBRA plan administrator, and the office manager who was the "contact person" for benefits issues testified that she had received informal training from insurance brokers regarding COBRA procedures but was uncertain as to whether she or the company president was the plan administrator.  *Id.*  The president also testified that the company did not have a written policy regarding COBRA notices and instead relied on oral policies derived from informal conversations between him and the office manager.  *Id.*  Additionally, the file copy of the COBRA notification letter allegedly sent to the plaintiff, which was introduced

the evidence presented at trial, the Court finds that MMC satisfied its good faith obligation to notify Plaintiffs of their right to continue coverage under COBRA.[11]

Finally, unlike in the cases on which Plaintiffs rely, MMC presented evidence of its normal procedures for the mailing of the notification letters as well as support that such procedures were in fact followed. In *Crotty*, for example, the court ruled that a plan administrator was not entitled to a presumption of receipt where the administrator relied on an audit report indicating that its computer system generated a notice letter. 455 F.3d at 831. The administrator did not present any evidence that the letter was printed, placed in a properly addressed envelope, or sent through the mail, however. *Id.*; *see also DeSimone*, 1991 WL 64857, at *3 (denying employer's motion for summary judgment where the defendant employer submitted an affidavit from its director of personnel which did not (i) reflect that she mailed the COBRA notice or directed another employee to do so, or (ii) detail the defendant's normal office procedures for such mailings); *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 104 (1st Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (deciding that a genuine issue of material fact existed as to whether the COBRA notice was timely mailed where the only evidence presented at the summary judgment stage was a notification letter and "a note, not a sworn affidavit" stating that the letter was timely mailed).[12]

---

at trial, contained typographical errors, was not signed, and had no indication of having been mailed. *Id.* at *3. The office manager testified that she did not remember mailing or typing the COBRA notice, and that while the file copy looked like the COBRA notices she sent out, she was unable to identify the document as the letter allegedly sent to the employee. *Id.*

[11] While Plaintiffs argue that MMC should have established a notification system that uses only town names recognized by the United States Postal Service, the Court will not hold Defendant to such a standard.

[12] Plaintiffs' reliance on *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223 (11th Cir. 2002), is also misplaced. *See* Pls. Mem. L. 3. There, the court affirmed summary judgment for the plaintiff where the employer argued that it satisfied its good faith obligation by providing its plan administrator with the necessary information and instructing

Plaintiffs' claim for relief under COBRA is therefore DENIED.

c. *Attorney's Fees and Costs*

In their post-trial submission, Plaintiffs request reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).  Under Section 1132(g)(1), a court may "in its discretion" allow reasonable attorney's fee and costs "to either party" in a COBRA action.  Plaintiffs argue that they are entitled to attorney's fees and costs because they are represented by a solo practitioner who engaged in a "long three year battle . . . against a team of [MMC] attorneys."  Pls. Mem. L. 8.  While this may be the case, Plaintiffs not demonstrated their entitlement to fees and costs under the standard applicable for requests under COBRA, and also have not provided the contemporaneous time records required to support such a request.

In *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 243 (2010), the Supreme Court ruled that a court may award attorney's fees under Section 1132(g)(1) to beneficiaries who have obtained "some degree of success on the merits."  *See also Donachie v. Liberty Life Assurance Co.*, 745 F.3d 41, 46 (2d Cir. 2014).  The Court in *Hardt* clarified that a claimant satisfies this requirement if the court "can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"  560 U.S. at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)).  Even if Plaintiffs are eligible for fees and costs by virtue of succeeding on the NYSHRL and NYLL claims,[13] the

---

the administrator to mail the notice to the plaintiff.  *Id.* at 1230.  The court decided that hiring an agent and instructing him to send notice is alone insufficient; instead, there must be evidence that the agent sent the notice to the plaintiff.  *Id.* at 1231.  Ms. Montalto's testimony provided such evidence here.

[13] *See Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 153 (2d Cir. 2013) (stating that the conclusion that the employer obtained some degree of success on the merits in ERISA action through the dismissal on summary judgment of the plan insurer's cross-claim for restitution was consistent with the Supreme Court's direction in *Hardt*

Court must still deny their request.

The Second Circuit has set forth the following five factors for a court's analysis of a request for attorney's fees under Section 1132(g)(1):

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). After *Hardt*, consideration of the *Chambless* factors is now discretionary. *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, No. 00-CV-7394 (ADS), 2013 WL 6388633, at *6 (E.D.N.Y. Dec. 5, 2013); *see also Toussan v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt*, 560 U.S. at 255); *Donachie*, 745 F.3d at 46 (stating that although a court *may*, without further inquiry, award attorney's fees to a plaintiff who has had some degree of success on the merits, *Hardt* also made clear that courts retain discretion to consider the five factors in its analysis of a request for fees).

Courts do not regard any one factor under *Chambless* as dispositive, and a plaintiff need not satisfy all five factors in order to recover attorney's fees and costs. *See, e.g.*, *Zervos v. Verizon N.Y., Inc.*, No. 01 Civ. 0685 (GBD) (RLE), 2002 WL 31553484, at *2 (S.D.N.Y. Nov. 13, 2002). Together, the factors take into account the relative merits of the parties' positions and require findings about bad faith. *Chambless*, 815 F.2d at 872. Here, aside from MMC's ability to satisfy a fees award, none of the above factors compel the conclusion that Plaintiffs are entitled to attorney's fees.

---

to engage in a limited review at this threshold stage in the attorney's fees analysis, examining only whether a party obtained "some success on some issue, independent of other claims in the case").

As to the first factor, "'[c]ulpability' and 'bad faith' are distinct standards, and a district court need not reach the question of bad faith in order to find the first *Chambless* factor satisfied." *Klepeis v. J & R Equip., Inc.*, No. 10 Civ. 0363 (CS) (PED), 2012 WL 410539, at *7 (S.D.N.Y. Feb. 9, 2012). "This standard necessarily involves consideration of the merits of [the] moving party's case, and thus of the first and fourth . . . factors together." *Id.* Plaintiffs have failed to demonstrate bad faith on the part of MMC. To the contrary, MMC has demonstrated that it acted in good faith and pursuant to standard office procedures in connection with the COBRA claim. *Cf. Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 210 (2d Cir. 2003) (affirming denial of attorney's fees where the employer made a good faith attempt to abide by the ERISA disclosure requirement in releasing plan documents to employees). With respect to culpability, courts have instructed that a party is only culpable when its conduct is intentional, blameworthy, and results in the breach of a legal duty. *See Perrera v. Gluck*, No. 99 Civ. 1779 (RLE), 2004 WL 2793270, at *3 (S.D.N.Y. Dec. 6, 2004). Despite the jury awards on the NYSHRL and NYLL claims, the Court does not find that MMC acted with a "degree of . . . culpability" such that would weigh in favor of fees. And success on the merits on the COBRA claim similarly counsels against an award of fees.

Furthermore, Plaintiffs have not shown that an award of fees here would deter other employers from acting as MMC has, or that there is any compelling reason to deter other employers from acting in the same manner. *Cf. Roganti v. Metro. Life Ins. Co.*, 972 F. Supp. 2d 658, 675 (S.D.N.Y. 2013) (stating that although MetLife would likely be able to satisfy any fee award, the court did not believe that such an award would deter other persons from acting similarly under like circumstances). Finally, because Plaintiffs did not bring suit to benefit a group of plan participants, the final factor cuts against an award of fees and costs. *See Priority*

*Solutions, Inc. v. Cigna & Price Waterhouse Health Plan*, No. 98 Civ. 4336 (MBM), 1999 WL 1057202, at *4 (S.D.N.Y. Nov. 8, 1999).  Accordingly, the Court does not find that Plaintiffs are entitled to fees under the framework set forth in *Chambless*.

Additionally, it is a well-established rule in this Circuit that absent unusual circumstances, attorneys are required to submit contemporaneous records with fee applications. *Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.*, No. 10 Civ. 5070 (THK), 2011 WL 6288422, at *7 (S.D.N.Y. Dec. 15, 2011) (quoting *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010)); *see also Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, No. 07 Civ. 349 (LAP) (FM), 2014 WL 793084, at *6 (S.D.N.Y. Feb. 28, 2014) (stating that a party seeking an award of attorney's fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done in order to enable a court to determine the reasonableness of the request); *Union of Orthodox Jewish Congregations of Am. v. Queseria Fiesta, LLC*, No. 12 Civ. 6059 (JPO), 2013 WL 1386965, at *3 (S.D.N.Y. Apr. 5, 2013) (observing that a party seeking an award of attorney's fees must support its request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done).  Here, Plaintiffs have similarly failed to provide any documentation supporting their request for attorney's fees, and have not requested either a specific amount in fees or proffered a method for the calculation of such fees.

Plaintiffs' request for attorney's fees and costs pursuant to Section 1132(g)(1) is therefore DENIED.

**Conclusion**

For the reasons set forth above, the Court finds in favor of Defendant MMC on the COBRA claim and denies Plaintiffs' request for attorney's fees and costs. The Clerk of the Court is directed to enter judgment accordingly and close the case.

It is SO ORDERED.

Dated: November 5, 2014
       New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.